# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02807-PAB-SKC

ALEXANDER HOOD, on behalf of himself and all similarly situated persons,

    Plaintiffs,

vs.

AMERICAN AUTO CARE, LLC, a Florida limited liability company,
BEACON FINANCIAL SOLUTIONS, LLC, a Florida limited liability company,
JESSIE BRITT, an individual,
KYLIE BRITT, an individual,
DAVID GLENWINKEL, an individual,
ROYAL ADMINISTRATION SERVICES, INC., a Florida corporation,
CARGUARD ADMINISTRATION INC., a Kansas corporation
MATRIX WARRANTY SOLUTIONS, INC., a Nevada corporation
 d/b/a ELEMENT PROTECTION PLANS,
EGV COMPANIES, INC. a Delaware corporation d/b/a OMEGA AUTO CARE,

    Defendants.

## REPLY BRIEF IN SUPPORT OF AAC DEFENDANTS'
## RULE 12(b)(2) MOTION TO DISMISS

    Mr. Hood concedes that the AAC Defendants are not subject to general jurisdiction in Colorado, yet his jurisdictional arguments rely chiefly on AAC's general contacts with the forum—namely, three consensual calls with non-party Colorado consumers. Specific jurisdiction may be predicated only on contacts that give rise to this lawsuit—namely, non-consensual calls to parties or putative parties. Here, the only jurisdictionally relevant contact is the August 2018 call between Mr. Hood and AAC, but the AAC Defendants gave sworn statements that they did not call Mr. Hood and that they have no connection with the number that called him. Mr. Hood cannot refute that with competent evidence, and, in any event, one call to a Vermont number would not justify jurisdiction in Colorado. Because there is no record of

1

purposeful Colorado contacts by AAC—let alone by the other AAC Defendants—this case should be dismissed against them.

**I.      THE ONLY JURISDICTIONALLY RELEVANT CONTACT IS THE AUGUST 2018 CALL, WHICH IS INSUFFICIENT TO SUPPORT JURISDICTION.**

A court may not exercise specific jurisdiction over a defendant unless the plaintiff shows that (1) the defendant took "intentional action . . . expressly aimed at the forum state . . . know[ing] that the brunt of the injury would be felt" there and (2) the alleged injury "'arise[s] out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071-72 (10th Cir. 2008). Mr. Hood's claim arises out of an allegedly unsolicited call he received in August 2018 on his Vermont telephone from a number that has no relation to the AAC Defendants. That call does not show that the AAC Defendants targeted Colorado. Mr. Hood also alleges that the AAC Defendants targeted Colorado with other telemarketing activities, but the only contacts he identifies were consensual, so they could not have given rise to his TCPA lawsuit, as specific jurisdiction requires.

**A.      The Facts Surrounding the August 2018 Call Cannot Support a Finding That the AAC Defendants Purposefully Directed Conduct Toward Colorado.**

The AAC Defendants did not initiate, or direct the initiation of, the August 2018 call with Mr. Hood. (AAC Decl. ¶¶ 11-12, 20; BFS Decl. ¶ 9; J. Britt Decl. ¶ 7; K. Britt Decl. ¶ 7; Glenwinkel Decl. ¶ 9.) Mr. Hood has not offered competent evidence to rebut this fact. Instead, he proffers his phone records showing an incoming call from "802-578-8675." (May 30, 2019 Decl. of Alexander Hood (Dkt. 68-1, the "Hood Decl.") ¶ 22.) But that number does not belong to the AAC Defendants, they do not use it, and they have no connection with it. (AAC Decl. ¶¶ 15-19; BFS Decl. ¶ 10; J. Britt Decl. ¶ 12; K. Britt Decl. ¶ 12; Glenwinkel Decl. ¶ 13.) While the AAC Defendants have no basis to doubt that someone contacted Mr. Hood in August 2018, it was not them.

But even if the AAC Defendants had called Mr. Hood in August 2018, that would not subject them to personal jurisdiction in Colorado. There is no dispute—and no need for jurisdictional discovery to show—that Mr. Hood was called on his Vermont cellular telephone. It is well-established that, by dialing Mr. Hood's Vermont telephone number, the AAC Defendants would not have been "expressly aim[ing]" their conduct at Colorado and would have had no reason to "know[] that the brunt of the injury would be felt" here. *Dudnikov*, 514 F.3d at 1072.[1]

Mr. Hood cites several cases to support the notion that a single call in violation of the TCPA can support specific jurisdiction (Resp. at 7 n.5), but, unlike this case, those cases dealt with calls and faxes to numbers with area codes in the forum state.[2] Indeed, one of Mr. Hood's cited cases expressly approved the reasoning that "personal jurisdiction [is] lacking where the [plaintiff's] phone number did not contain a forum-state area code." *Abramson v. CWS Apartment Homes, LLC*, No. 16-cv-426, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016). Whoever initiated it, the August 2018 telephone call to Mr. Hood's Vermont cellular telephone did not purposefully target Colorado, so it cannot support specific jurisdiction.

---

[1] *See Frank v. Gold's Gym*, No. 18-cv-447, 2018 WL 3158822, at *3 (D. Minn. June 28, 2018); *Eisenband v. Starion Energy, Inc.*, No. 17-cv-80195, 2018 U.S. Dist. LEXIS 79572, at *17 (S.D. Fla. May 11, 2018); *Hastings v. Triumph Prop. Mgmt. Corp.*, No. 15-cv-312, 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015); *Cantu v. Platinum Mktg. Grp.*, No. 14-cv-71, 2015 U.S. Dist. LEXIS 90824, at *9-10 (S.D. Tex. Jul. 13, 2015); *Sojka v. Loyalty Media LLC*, No. 14-cv-770, 2015 WL 2444506, at *3 (N.D. Ill. May 20, 2015); *Cunningham v. Caribbean Cruise Line, Inc.*, No. 3:14-cv-01040, 2015 WL 475271, at *6 (M.D. Tenn. Feb. 4, 2015); *Michaels v. Micamp Merch. Servs.*, No. 13-cv-191E, 2013 WL 5970340, at *1 (W.D. Pa. Nov. 8, 2013). Mr. Hood attempts to distinguish this settled line of authority by arguing these cases included "little evidence" of jurisdictionally relevant contacts. (Hood Response Brief (Dkt. 68, "Resp.") at 6 n.4.) But the same is true here, where, aside from the August 2018 call, Mr. Hood has not alleged any contacts with Colorado that would give rise to a TCPA claim.

[2] *See Keim v. ADF Midatl., LLC*, 199 F. Supp. 3d 1362, 1370 (S.D. Fla. 2016) (holding defendants "should have reasonably anticipated that sending the allegedly TCPA-violating text messages to a Florida resident's Florida cell phone would cause harm in Florida."); *see also Tickling Keys, Inc. v. Transam. Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1346, 1349 (M.D. Fla. 2018) (predicating TCPA jurisdiction on fax sent to a landline machine in forum).

3

### B.     Mr. Hood's Other Allegations About AAC's Telemarketing Are Jurisdictionally Irrelevant.

Mr. Hood contends that specific jurisdiction also may be predicated on the AAC Defendants' general telemarketing activities—specifically, three contacts with Colorado consumers. Even though these contacts "may have been purposeful," Mr. Hood's "cause of action must also arise out of" them, yet it does not. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1068 (10th Cir. 2007). The TCPA covers telephone calls (i) initiated by a defendant, (ii) using an automatic telephone dialing system or an artificial or pre-recorded voice, and (iii) without the consent of the call recipient. 47 U.S.C. § 227(b)(1)(A)-(B). Mr. Hood identifies three Colorado consumers who sought automotive warranties, initiated contact with AAC, and consented to its services. (SAC ¶ 18 ("America Auto Care contacted me after I contacted Nissan for a service contract. Their rep . . . did a good job."); ¶ 19 ("I needed some extended warranty on my truck. I called America Auto Care . . . ."); ¶ 20 ("America Auto Care was more affordable than their competitors when I was looking for a typical warranty to cover my vehicle . . . and I got what I needed to be done."); *accord* Hood Decl. ¶ 28.) Nothing in the allegations or evidence suggests that AAC utilized prohibited means to engage these consenting consumers. Because none of these alleged calls bears the attributes of a TCPA violation, and because they are not pleaded as such, they are "not the subject matter of [Mr. Hood's] claims [and] have no place in the jurisdictional calculus." *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016).

Beyond these specific allegations about three Colorado consumers, Mr. Hood offers statements only about a nationwide telemarketing operation that includes Colorado. (SAC ¶¶ 14-15 ("Defendants use telemarketing to sell vehicle service contracts (VSCs) nationwide, including in Colorado . . . ."); Hood Decl. ¶¶ 26-27 ("[I]t was clear that AAC makes calls across the country attempting to sell its extended warranties, including to Colorado . . . .").) These

4

conclusory allegations about general contacts between AAC and Colorado cannot support jurisdiction, nor may the Court rely on the parallel conclusory statements in Mr. Hood's declaration. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Circ. 1995) ("[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) ("'[M]ere affidavits which parrot and do no more than restate plaintiff's allegations . . . without factual content do not end the inquiry.'" (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984))).

Specific jurisdiction is appropriate only if "the litigation results from alleged injuries that 'arise out of or relate to'" the forum contacts invoked to support jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quoting *Helicopteros Nac'l de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Mr. Hood has not alleged or shown that this lawsuit arises from any contacts with Colorado other than the August 2018 call, so the Court should disregard any other contacts in its jurisdictional analysis.[3]

## II. COMPELLING THE AAC DEFENDANTS TO APPEAR IN COLORADO WOULD OFFEND FAIRNESS PRINCIPLES.

In light of the vanishingly thin contacts between AAC and Colorado, forcing the AAC Defendants to litigate here would be unfair. Mr. Hood concedes that litigating in Colorado would impose a burden on the AAC Defendants, but he discounts the weight of that burden,

---

[3] Mr. Hood takes issue with this black-letter rule and argues that the Court "must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." (Resp. at 6 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006)).) In formulating this position, Mr. Hood misconstrues a case that actually ratified the "arises out of" rule. In *Yahoo! Inc.*, the Ninth Circuit explained that even lawful contacts should be considered, but only because "a holding on the merits that the [alleged] act was not wrongful would [otherwise] deprive the court of jurisdiction." 433 F.3d at 1208. That, however, does not change the rule that, to be relevant to specific jurisdiction, forum contacts must give rise to the claims in the lawsuit. *Id.* at 1210-11 (basing jurisdiction on "direct relationship between [defendant's] contacts with the forum and the substance of the suit"). A contrary rule would erase the line between general and specific jurisdiction. *See Helicopteros*, 466 U.S. at 414 & nn. 8-9.

ignoring the fact that their operations, their employees, and their physical records—all in Florida—would have to come to Colorado, disrupting their business and their lives. He also overstates Colorado's interest in adjudicating this matter. Mr. Hood intends to certify class claims from "thousands" of individuals across the country. (SAC ¶ 55.) If any state has a dominant interest in the resolution of this dispute, it is Florida, which regulates the primary Defendant, and where the majority of all the Defendants resides.[4] Nor has Mr. Hood shown why litigating in Colorado will inure to the benefit of the putative class members that he intends to certify. Indeed, for a nationwide plaintiffs' class, there generally is no jurisdiction more convenient or more effective than another. The interests of the interstate judicial system do not favor jurisdiction here, either, since the key factor is the location of witnesses, and the majority of Defendants and their employee-witnesses are in Florida. None of the Defendants are located in Colorado, and justice is not served by forcing everyone to travel to Mr. Hood simply because he allegedly received a single phone call here in violation of the TCPA. Finally, three of the corporate Defendants are regulated in Florida, and the majority of the Defendants reside there, so if any state's social policy interests predominate, it is Florida's, not Colorado's.

### III. THERE IS NO BASIS FOR IMPUTING AAC'S JURISDICTIONAL CONTACTS, IF ANY, TO OTHER DEFENDANTS.

Mr. Hood does not identify any specific, Colorado-directed act or conduct by BFS or the Individual Defendants, yet he lumps them together with AAC and insists they are "subject to the same specific jurisdiction." (Resp. at 10.) Jurisdictional facts "must be found as to each defendant over whom the court exercises jurisdiction." *Home-Stake Prod. Co. v. Talon Petro., C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). Even if this Court had jurisdiction over AAC based

---

[4] Defendants Mr. and Mrs. Britt, AAC, BFS, and Royal Administration Services, Inc. are all Florida residents. The AAC Defendants note, too, that Defendant Matrix Warranty Solutions has moved to dismiss Mr. Hood's complaint citing, among other things, a lack of jurisdictional contacts with Colorado. (Dkt. 71.)

on the August 2018 call (it does not), Mr. Hood has not provided sufficient allegations or evidence to attribute such contacts to the other AAC Defendants.

As to BFS, Mr. Hood summarily contends that AAC is its "agent" (Resp. at 11; SAC ¶ 7), but the only factual contentions regarding BFS are that it owns AAC and that AAC uses BFS's call center. (SAC ¶ 7; Hood Decl. ¶¶ 34-36.) These circumstances do not show that BFS targeted Colorado, directly or indirectly. Corporate ownership does not itself create an agency relationship, and there are no facts showing that BFS was directing AAC or that AAC was purporting to act for BFS in its telemarketing operations. *See BASF Corp. v. Willowood, LLC*, 359 F. Supp. 3d 1018, 1025-27 (D. Colo. 2019); *Eim v. CRF Frozen Foods LLC*, No. 18-cv-01404-PAB-KLM, 2019 WL 1382790, at *4 (D. Colo. Mar. 26, 2019); *see also SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1165 (D. Colo. 2003) (Brimmer, J.) (requiring "actual control" by a corporate parent before it is subject to jurisdiction based on its subsidiary). To the contrary, Mr. Hood's declaration describes AAC's telemarketing business as distinct from BFS's debt-collection work. (Hood Decl. ¶ 34-36.) Nor does the shared call center, which Mr. Hood characterizes as a "joint venture," impute AAC's jurisdictional contacts to BFS. *See Melea,* , 511 F.3d at 1069-70 (observing that joint liability among co-defendants does not impute jurisdiction from one defendant to another, absent a showing of minimum contacts as to both defendants); *Moran Pipe & Supply Co., Inc. v. Schwartz*, 680 F. Supp. 1499, 1503 (E.D. Okla. 1988) (rejecting joint venture as basis to impute jurisdictional contacts). There is not a single allegation in the Second Amended Complaint or a single statement in Mr. Hood's declaration setting forth any acts or conduct by BFS, let alone acts or conduct directed to Colorado, so there is no basis to subject BFS to jurisdiction here.[5]

---

[5] In his Response Brief, Mr. Hood also contends that the Second Amended Complaint and his declaration show that BFS and AAC are alter egos (Resp. at 11), but this theory is nowhere articulated in those documents or in

As to the Individual Defendants, Mr. Hood asserts an agency relationship with AAC, reasoning that a corporation "can act only through its agents" (Resp. at 11), but Mr. Hood identifies only one individual who allegedly acted on AAC's behalf: the woman who supposedly initiated the August 2018 call, "Meghan." (SAC ¶ 45; Hood. Decl. ¶¶ 11-18.) Mr. Hood links the Individual Defendants to Meghan and AAC by asserting that each was "a direct participant in the telemarketing scheme and . . . controlled, authorized and directed telemarketing calls to Colorado residents as part of their responsibilities." (Resp. at 10.) But these conclusory statements do not provide well-pled facts sufficient to show that the Individual Defendants initiated contact with Colorado or that they directed Meghan or anyone else to do so. *Wenz*, 55 F.3d at 1505.[6] The Individual Defendants are subject to jurisdiction only "if they had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Universal Elections*, 767 F. Supp. 2d at 415 (quotation marks and citation omitted) (collecting cases). Mr. Hood has failed to show this with evidence or non-conclusory allegations of fact.

**IV.   THIS CASE SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND AS TO THE AAC DEFENDANTS, WHO ARE ENTITLED TO THEIR FEES.**

Mr. Hood should not be granted leave to file a third amended complaint. He already has exercised his right to amend as a matter of course, so any further amendment is permitted only if justice so requires. Justice does not favor amendment here because Mr. Hood has not requested

---

the Response Brief, nor do they show the extensive factual predicates necessary to support an alter ego finding. *See, e.g.*, *Eim*, 2019 WL 1382790, at *4 (Brimmer, J.) (listing eleven factors relevant to finding of alter ego relationship and rejecting personal jurisdiction where evidence and "well-pled" allegations failed to address them).

[6]   Even the cases Mr. Hood cites do not support jurisdiction over corporate employees based on general allegations about their management responsibilities and ownership. *See Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1057, 1061 (D. Or. 2014) (distinguishing allegation that individual "was vice president and 20% owner, controlled and authorized the policies and practices regarding the TCPA," which is inadequate for jurisdiction, from allegation that individual (i) "design[ed] and implement[ed] all activity . . . including deliberately turning off all Do-Not-Call lists," (ii) knew the forum-specific area codes that were being used, and (iii) "personally received numerous emails concerning requests to stop the calls . . . but ignored them," which satisfies jurisdiction); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 411, 415 (D. Md. 2011) (assigning liability to corporate employees who recorded and uploaded robocalls and instructed vendor to deliver message).

leave and has failed to identify any facts that would cure the jurisdictional defects in the Second Amended Complaint, even after filing three complaints and a detailed declaration. *See Dillard v. Bank of N.Y.*, 476 F. App'x 690, 692 (10th Cir. 2012) (unpublished) (affirming dismissal without leave to amend where *pro se* plaintiff "did not seek leave to amend until after the magistrate judge recommended that the case be dismissed" and provided "nothing in the facts [to] suggest[] that any amendment could have cured [the] pleading deficiencies").

The AAC Defendants are also entitled to their attorneys' fees. Under C.R.S. § 13-17-201, a defendant in a tort action "shall" recover its fees if the action is dismissed under Rule 12(b). Mr. Hood contends that the statute "does not apply to federal claims" like the TCPA (Resp. at 12), but claims under the TCPA sound in tort, and Colorado courts have awarded fees under C.R.S. § 13-17-201 in TCPA cases. *See US Fax Law Center, Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 516-17 (Colo. App. 2009) (rejecting argument that federal law preempts C.R.S. § 13-17-201 or that the statute applies only to "state torts," and affirming award of fees). Conversely, Mr. Hood argues that the fees statute should not apply because this Court is exercising federal-question jurisdiction (Resp. at 12-14), but that assertion is inapposite for three reasons. First, Congress expressly stated that the TCPA must be construed in conjunction with state law and rules. *See US Fax Law Center, Inc. v. iHire, Inc.*, 476 F.3d 1112, 1116-18 (10th Cir. 2007) (citing 47 U.S.C. § 227(b)(3), which states that application of the TCPA is subject to "the laws or rules of a court of a State"). Second, Mr. Hood identifies no binding authority prohibiting the application of C.R.S. § 13-17-201 in a federal-question case. Indeed, since TCPA claims may be asserted in state or federal court, *compare id.*, *with Henry Schein*, 2015 P.3d at 516, such a rule would incentivize the sort of forum shopping that *Erie* and its progeny reject, *see Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996).

Third, this Court likely has diversity jurisdiction under 28 U.S.C. § 1332(d) anyway. The allegations establish minimal diversity and plead "thousands" of class members, each with alleged claims of at least $1,500.

## CONCLUSION

Mr. Hood allegedly received one telephone call to his Vermont cellular telephone from a number that has no connection to any of the AAC Defendants, and he has offered no other case-related Colorado contacts to justify haling the AAC Defendants before this Court. While the AAC Defendants deny any role in initiating that call, even if they did, there is no dispute that the call was placed to Mr. Hood's out-of-state telephone line. Thus, even by his own account, there is no basis to conclude that Mr. Hood's TCPA claim arises from a contact purposefully directed at Colorado. Because Mr. Hood has not carried his burden to establish this Court's jurisdiction over the AAC Defendants, the Second Amended Complaint should be dismissed against them without leave to amend.

DATED: June 13, 2019

Respectfully submitted,

*s/Holly Stein Sollod*
Holly Stein Sollod
Paul D. Swanson
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202-3979
Telephone: 303-295-8085
Facsimile: 303-975-5395
hsteinsollod@hollandhart.com
pdswanson@hollandhart.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2019, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

> BGonzales@ColoradoWageLaw.com
> wyoadvocate@gmail.com
> bmcgovern@mlklaw.com
> cderoode@mlklaw.com
> twagner@polsinelli.com
> jeff.whitfield@kellyhart.com
> bleoni@lewisbess.com

                                                *s/Holly Stein Sollod*
                                                Holly Stein Sollod