IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02807-PAB-SKC

ALEXANDER HOOD, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

AMERICAN AUTO CARE, LLC and BEACON FINANCIAL SOLUTIONS, LLC, both
Florida limited liability companies, JESSIE BRITT, KYLIE BRITT, and DAVID
GLENWINKEL, each individuals, ROYAL ADMINISTRATION SERVICES, INC. a
Florida corporation, CARGUARD ADMINISTRATION INC., a Kansas corporation,
MATRIX WARRANTY SOLUTIONS, INC., d/b/a ELEMENT PROTECTION PLANS, a
Nevada corporation, and EGV COMPANIES, INC., d/b/a OMEGA AUTO CARE, a
Delaware corporation,

Defendants.

_____

**RESPONSE IN OPPOSITION TO DEFENDANT MATRIX WARRANTY SOLUTIONS,
INC.'S MOTION TO DISMISS UNDER 12(b)(6) FOR FAILURE TO
STATE A CLAIM AND 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

**[Filed June 7, 2019 – ECF No. 71]**

_____

Plaintiff, by and through counsel, respectfully submits this response in opposition

to *Defendant Matrix Warranty Solutions, Inc.'s Motion to Dismiss under 12(b)(6) for*

*Failure to State a Claim and 12(b)(2) For Lack of Personal Jurisdiction* (ECF No. 71)(the

"Motion").

## I.  INTRODUCTION

Defendant American Auto Care, LLC ("AAC") implemented a nationwide

telemarketing campaign – calling tens of thousands of customers for the purpose of

selling automobile warranties.  In placing these "robo-calls" indiscriminately throughout the United States, AAC had repeated and continuous contacts with consumers in Colorado, including Plaintiff.  In this lawsuit, Plaintiff contends these calls were in direct violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, (the "TCPA"), which seeks to preserve a measure of privacy for users of telephones and facsimile machines.  AAC's pending *Rule 12(b)(2) Motion to Dismiss* (ECF No. 57)(the "AAC Motion to Dismiss") argues that, despite having directly targeted Colorado residents, AAC does not have the minimum contacts with Colorado necessary for jurisdiction to attach.

Although its business is selling automobile warranties, AAC does not actually provide those warranties.  Instead, the warranties AAC telemarkets to Colorado residents are provided by Matrix.  In other words, AAC's illegal telemarketing activities are conducted as Matrix's agent and those activities are imputed to Matrix for purposes of TCPA vicarious liability and specific jurisdiction.[1]

## II.  FACTUAL BACKGROUND

AAC operates a telemarketing operation designed to sell "vehicle service contracts".  *Second Amended Class Action Complaint* at ¶¶39-42 (ECF No. 45)(the "Amended Complaint").  Under these contracts customers are provided vehicle repair coverage after their manufacturer's warranty expires.  *Id.*; *Declaration of Alexander Hood* ("Hood Dec.") at ¶¶3-18), attached as Exhibit 1 to the Response.

---

[1] Since Matrix's TCPA liability is derivative of AAC's, determination of the AAC Motion to Dismiss is logically antecedent to resolution of the current Motion.  Plaintiff, therefore, respectfully incorporates herein his response in opposition to the AAC Motion to Dismiss (ECF No. 68)(the "Response").  The following argument assumes the AAC Motion to Dismiss ultimately is denied with respect to AAC.

AAC's telemarketing operation is nationwide and includes calls and warranty sales to Colorado residents and Colorado telephone numbers.  (Am. Compl. at ¶¶14-31); (Hood Dec. at ¶¶23-29).  In fact, AAC boasts on its website that covered "repair facilities are present throughout the United States and Canada, meaning an America Auto Care extended auto warranty can cover you even while you're traveling."  (Hood Dec. at ¶29).  Among the numerous Colorado residents contacted by AAC was Plaintiff, whose privacy frequently is interrupted by unsolicited car warranty "robo-calls" and who, on August 17, 2018, received such a call from AAC.  (Am. Compl. at ¶¶44-45); (Hood Dec. at ¶¶3-18).  Plaintiff alleges in this lawsuit that this call – as well as thousands of others made to residents of Colorado and throughout the United States – violates the TCPA.  (Am. Compl. at ¶¶62-66).

AAC's telemarketing activities in Colorado are conducted on behalf of Matrix, the provider of the warranties AAC sells.  (Am. Compl. at ¶¶39-42).  As a result, AAC was Matrix's agent/alter ego with regard to the TCPA violations at issue.  *Id.* at ¶10;

## III.  ARGUMENT

### A.    Plaintiff States a Claim Against Matrix.

#### 1.    Legal Standard.

The Supreme Court set forth the standard for pleadings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), stating that pleadings need only include "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  Using this standard, courts accept all well-pleaded factual allegations as true and view those allegations in the light most favorable to the nonmoving party.  *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).  Under FED. R. CIV. PROC. 8, "specific facts are not necessary; the

statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) citing *Twombly*, 550 U.S. at 555.  Ultimately, the issue is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims.  *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

### 2.    Matrix is Liable for Its Agent's TCPA Violations.

Matrix seeks 12(b)(6) dismissal because "the Complaint alleges no fact that would allow the Court to draw a reasonable inference that Matrix made the call that is the subject of this case."  (Mot. at 4).  In other words, according to Matrix, the fact that it was AAC that physically made thousands of illegal telemarketing calls to Colorado residents somehow insulates Matrix from liability.  This simply is not the law under the TCPA, which imposes vicarious liability based on agency principles.  *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 674 (2016)("[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations and we have no cause to question it.")(citations omitted); *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 WL 7380708, *4 (E.D.Penn. December 19, 2016).  In other words, Matrix cannot escape TCPA liability simply by hiring another company to violate the law on its behalf.  Since Matrix has made no effort to rebut Plaintiff's allegations establishing the Matrix/AAC agency/joint venture relationship, (Am. Compl. at ¶10), those facts are taken as true and, for purposes of this Motion, vicarious liability attaches.[2]

---

[2] Inexplicably, Matrix contends that Plaintiff has "not claimed that Matrix is vicariously liable for the calls it alleges were wrongfully made by AAC."  (Mot. at 4).  But that is exactly what Plaintiff alleges.  (Am. Compl. ¶10).

B.     **The Court Has Specific Jurisdiction Over Matrix.**

1.     **Legal Standard**

"When a district court rules on a FED R. CIV. PROC. 12(b)(2) motion to dismiss for

lack of personal jurisdiction without holding an evidentiary hearing[3] . . . the plaintiff need

only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI*

*Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other

written materials, facts that if true would support jurisdiction over the defendant", i.e.,

that the defendant had "minimum contacts" with the forum. *Id*. Once minimum contacts

are shown, the burden shifts to the defendant to present a "compelling case

demonstrating 'the presence of some other considerations that would render jurisdiction

unreasonable.'" *Id*. citing *Burger King Corp. v. Rudzewicz*, 471 U.S. at 477 (1985).

"In the preliminary stages of litigation . . . the plaintiff's burden is light." *Wenz v.*

*Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "'The allegations in the complaint

must be taken as true to the extent they are uncontroverted by the defendant's

affidavits.'" *Id*. citing *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992).

"If the parties present conflicting affidavits, all factual disputes must be resolved in the

plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the

contrary presentation by the moving party.'" *Id*.

Plaintiff contends Matrix had "such minimum contacts with [Colorado] 'that it

should reasonably anticipate being haled into court there.'" O*MI Holdings*, 149 F.3d at

---

[3] Plaintiff submits that the Motion can be resolved based on the written submissions.  If
the Court wishes to go beyond those submissions and conduct a full evidentiary
hearing, Plaintiff first requests a limited period of jurisdictional discovery.

1091 citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297 (1980).  In

particular, Matrix, through its agent AAC, "purposefully directed its activities at residents

of [Colorado]" and Plaintiff's claim arises out of "actions by [Matrix] that create a

substantial connection with [Colorado].'" *OMI Holdings*, 149 F.3d at 1091 citing *Asahi*

*Metal Industry Co. v. Sup. Ct. of Cal.*, 480 U.S. 102 (1987).

> In the tort context, we often ask whether the nonresident defendant
> "purposefully directed" its activities at the forum state; in contract cases,
> meanwhile, we sometimes ask whether the defendant "purposefully
> availed" itself of the privilege of conducting activities or consummating a
> transaction in the forum state.  In all events, the shared aim of "purposeful
> direction" doctrine has been said by the Supreme Court to ensure that an
> out-of-state defendant is not bound to appear to account for merely
> "random, fortuitous, or attenuated contacts" with the forum state.

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d, 1063, 1071 (10th Cir. 2008)

(internal citations omitted) citing *Burger King*, 471 U.S. at 475.  Among other things,

"purposeful direction" is shown though an intent to market to the forum state.  *Asahi,*

480 U.S. 102, 109; *see also Sojka v. Loyalty Media LLC,* No. 14–cv–7702015, WL

2444506, **2 (N.D.Ill. May 20, 2015)("The defendant must engage in additional

purposeful conduct that shows the intent to serve the market of the forum state.")

**2.    Matrix Is Subject to Specific Jurisdiction Because AAC Was Acting
on Its Behalf.**

Plaintiff has alleged that AAC, in violating the TCPA, was acting as Matrix's agent

and/or that Matrix and AAC were joint venturers in their scheme to illegally market

automobile warranties to Colorado residents.  (Am. Compl. at ¶10).  These allegations

must be accepted as true since Matrix has made no effort to rebut them through

affidavits or otherwise.  Therefore, for purposes of resolving the Motion, Matrix is

vicariously liable for it's agent AAC's conduct.  *Id.*

Principals may be subject to specific jurisdiction due to the actions of their agents/alter egos even if the principals were not directly involved in those actions. *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir. 1974)("'[A]s all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the *in personam* jurisdiction of the state.'") quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962); *Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014)("Agency relationships, we have recognized, may be relevant to the existence of specific jurisdiction.  'A corporation is a distinct legal entity that can act only through its agents.'  As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.") citing 1 W. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS §30, p. 30 (Supp. 2012–2013); *Fischer v. BMW of North America, LLC*, 376 F.Supp.3d 1178 (D.Colo. 2019)(Brimmer)("[C]ourts have recognized an agency or alter ego theory of personal jurisdiction under which the activities of a subsidiary company may be imputed to its parent . . . ."); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004)(considering argument that subsidiary's contacts could be imputed to parent company under agency or alter ego theory); *Warad West, LLC v. Sorin CRM USA, Inc.*, 119 F.Supp.3d 1294, 1298 (D.Colo. 2015) (noting that an "alter ego theory of personal jurisdiction has been consistently acknowledged in the federal courts"); *Eim v. CRF Frozen Foods LLC*, No. 18-CV-01404-PAB-KLM, 2019 WL 1382790, at *4 (D.Colo. Mar. 26, 2019)(Brimmer)(recognizing that specific jurisdiction may be established through

agency principles); *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F.Supp.2d 1161, 1165 (D.Colo. 2003).

Moreover, Colorado's long arm statute specifically extends the reach of Colorado Courts to principals like Matrix. *See* COLO. REV. STAT. § 13-1-124 ("Engaging in any act enumerated in this section by any person,…***either in person or by an agent***, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts this state....")(emphasis added); *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 67–68 (Colo. 2007)("Hence, under Colorado's long-arm statute, a nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the defendant's agent.").

### 3. Given Its Systematic Business Contacts with Colorado, Subjecting Matrix to Jurisdiction Is Reasonable.

"When a plaintiff satisfies her minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless 'offend traditional notions of fair play and substantial justice.'" *Carskadon v. Diva Inter., Inc.*, No. 12–cv–01886–RM–KMT, 2014 WL 7403237, *9 (D.Colo. Feb. 26, 2014) citing *Newsome v. Gallacher*, 722 F.3d, 1257, 1257 (10th Cir. 2013) citing *Dudnikov*, 514 F.3d at 1080. "'Such cases are rare.'" *Carskadon*, 2014 WL 7403237, *9 citing *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009). "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carskadon*, 2014 WL 7403237, *9 citing *Burger King*, 471 U.S. at 477.

Given Matrix's repeated business transactions with Colorado through its agent AAC, subjecting it to jurisdiction is fair and quite reasonable.  In any event, to overcome

8

these minimum contacts, Matrix's "compelling case" turns on several factors: (1) the

burden on Matrix; (2) the forum state's interest in resolving the dispute; (3) Plaintiff's

interest in receiving convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies; and (5) the shared

interest of the several states in furthering fundamental substantive social policies.  *TH

Ag. & Nutrition, LLC v. ACE Euro. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007).

Matrix does not address these factors and, therefore, cannot meet its burden to

overcome its minimum contacts with Colorado.

## C.    Colorado's State Tort Fee-Shifting Statute Does Not Apply to Federal Claims.

If Matrix were to be successful in its motion, it should not be granted attorney's

fees pursuant to C.R.S. §13-17-201.  Despite the statute's language seemingly limiting

a fee award to dismissals under Colorado Rule of Civil Procedure 12(b), the Tenth

Circuit has expanded the statute to apply to dismissals under Federal Rule of Civil

Procedure 12(b) when a federal court (1) has diversity or supplemental jurisdiction and

(2) is dismissing a Colorado tort claim.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 757,

n.6 (10th Cir. 2000)(Before applying C.R.S. §13-17-201, observing that "[w[hen

exercising jurisdiction over pendent state claims, we must apply the substantive law of

the forum state just as we would if our jurisdiction rested on diversity of citizenship.");

*Shrader v. Bean*n, 503 F. App'x 650, 654–55 (10th Cir. 2012)("The statute also applies

to a dismissal under FED. R. CIV. PROC. 12(b) of a tort claim brought under Colorado

law.")  Thus, in *Eim v. CRF Frozen Foods LLC,* No. 18-CV-01404-PAB-KLM, 2019 WL

1382790 (D.Colo. Mar. 26, 2019)*,* this Court correctly applied C.R.S. §13-17-201 to its

dismissal of a case involving four Colorado torts while sitting in supplemental jurisdiction.  *Id.* at *6–7, n. 17 quoting *Jones*, 203 F.3d at 757 n. 6.

But this case does not involve Colorado torts and the Court does not have diversity or supplemental jurisdiction.  Instead, this is a federal statutory claim and the Court has federal question jurisdiction.  And courts refuse to apply C.R.S. §13-17-201 to cases consisting exclusively of federal claims brought in federal court.  *Bethel v. U.S.ex rel. Veterans Admin. Med. Ctr. of Denver, Colorado*, 2006 WL 3262853, at *1 (D.Colo. Nov. 9, 2006)("[T]his case is materially distinguishable from these cases, as plaintiff did not bring a state-law tort action but rather brought suit pursuant to federal law").  C.R.S. §13-17-201 has never been applied in this situation, Matrix cites to no case for the proposition that the statute's reach should be expanded, and thus any argument for that expansion should be deemed waived.  *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D.Colo. 1999)(underdeveloped, conclusory, and superficial arguments waived).

Regardless, any such argument would have no merit.  Limiting the application of C.R.S. §13-17-201 to dismissals of Colorado state tort claims by a federal court with diversity or supplemental jurisdiction is based on the well-trodden principles of the *Erie* doctrine.  In *Erie*, the Supreme Court interpreted the Rules of Decision Act to require the application of state substantive law "[e]xcept in matters governed by the Federal Constitution or by acts of Congress."  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see* 28 U.S.C. §1652 (Rules of Decision Act).  Thus, when a court has diversity or supplemental jurisdiction, it must apply the substantive state law when reaching its decision, and the Tenth Circuit has long held that state "attorney fee statutes are considered substantive."  *Jones*, 203 F.3d at 757 citing *Boyd Rosene & Assocs. v.*

*Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir.1999)(finding that attorney

fees are substantive for diversity purposes).

But the converse is also true and bars application of C.R.S. §13-17-201 here.

When a court is deciding a purely federal claim under federal question jurisdiction, the

Court must apply federal substantive law to its decision.  *See* 28 U.S.C. § 1652 ("The

laws of the several states, except where the Constitution or treaties of the United States

or Acts of Congress otherwise require or provide, shall be regarded as rules of decision

in civil actions in the courts of the United States, in cases where they apply."); *see*

*generally Erie*, 304 U.S. 64.  Federal Courts have long used this rule to apply federal

statutory interest, rather than state statutory interest, to judgments on federal claims.

*Perkins v. Standard Oil Co. of California*, 487 F.2d 672, 675 (9th Cir. 1973)("[I]t is

established that, where the cause of action asserted arises from a federal statute,

questions of the allowance of postjudgment interest in federal courts are governed

solely by federal law.") citing *Milwaukee Towne Corp. v. Loew's, Inc.*, 200 F.2d 17, 20

(7th Cir. 1952); *Briggs v. Pennsylvania R. Co.*, 164 F.2d 21, 22 (2d Cir. 1947), affirmed,

334 U.S. 304 (1948); *Louisiana & Arkansas Ry. v. Pratt*, 142 F.2d 847, 848 (5th Cir.

1944).

Based on this principle, when, as here, a court is deciding a federal claim and

sitting in federal question jurisdiction, the Court cannot ignore federal law limiting fee

shifting in favor of a Colorado statute providing the opposite.  The Supreme Court

articulated the federal substantive law on fee shifting in *Alyeska Pipeline Serv. Co. v.*

*Wilderness Soc'y*, 421 U.S. 240 (1975).  There, the Supreme Court pointed out that

"[a]lthough…Congress has made specific provision for attorneys' fees under certain

federal statutes, it has not changed the general statutory rule that allowances for counsel fees are limited to the sums specified by the costs statute." *Id.* and citing 28 U.S.C. §§ 1920, 1923(a)); *see also* FED. R. CIV. PROC. 54(d)(1)("Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party.")  Importantly, there is no exception to the federal statutory rule against fee shifting in the TCPA, the federal statute in play here.  *See, e.g., Holtzman v. Turza*, 828 F.3d 606, 608 (7th Cir. 2016) ("[TCPA] is not a fee-shifting statute.")  In *Alyeska*, the Supreme Court was also careful to acknowledge a different outcome if the Court were sitting in diversity and bound by the Rules of Decision Act to apply state substantive law.  421 U.S. at n. 31 ("A very different situation is presented when a federal court sits in a diversity case…where the state law does not run counter to a valid federal statute or rule of court, … state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.")

Thus, as in *Eim*, a federal court with diversity or supplemental jurisdiction must turn to Colorado substantive state law on fee shifting after dismissal.  But here, as a federal court considering exclusively federal law under federal question jurisdiction, the Court must rely on federal substantive law and disallow fee shifting if there is a dismissal.

**D.     Discovery in the Alternative**

In the alternative, If the Court does not feel Plaintiff has met his burden to establish personal jurisdiction on the papers, Plaintiff requests discovery on the factual issue underpinning the jurisdictional dispute, *e.g.*, whether or not AAC was acting as an

agent of Matrix.  *See Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion.")  Plaintiff's position on the proposed stay of discovery was based exactly on this.  (ECF No. 64).

WHEREFORE, Plaintiff respectfully requests the Court to deny the Motion in its entirety.  In the alternative, Plaintiff requests limited jurisdictional discovery concerning the issues raised in the Motion.

Respectfully submitted this 28th day of June, 2019.

*s/Brian D. Gonzales*
_____
Brian D. Gonzales
THE LAW OFFICES OF
BRIAN D. GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Telephone: (970) 214-0562
BGonzales@ColoradoWageLaw.com

Dustin T. Lujan
Lujan Law Office
1603 Capitol Ave, Suite 310 A559
Cheyenne, Wyoming 82001
Telephone: (970) 999-4225
wyoadvocate@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of June, 2019, a true and correct copy of the foregoing **RESPONSE IN OPPOSITION DEFENDANT MATRIX WARRANTY SOLUTIONS, INC.'S MOTION TO DISMISS UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM & 12(b)(2) FOR LACK OF PERSONAL JURISDICTION** was served electronically on all counsel of record.

*s/Brian D. Gonzales*

_____